UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
THOMSON FINANCIAL INC.

             Plaintiff,

             - against -

INDII.COM USE, LLC D/B/A INDII
COMMUNICATIONS,

             Defendant.
------------------------------------------------------------------------ x

Civil Action No. 04 Civ. 10091 (BSJ)

**COMPLAINT**

Plaintiff Thomson Financial Inc. ("Plaintiff"), by its attorneys Torys LLP, complaining of defendant Indii.Com USE, LLC d/b/a Indii Communications ("Defendant"), alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff seeks injunctive relief and damages for acts of trademark infringement, unfair competition, trademark dilution and deceptive trade practices, engaged in by Defendant in violation of the laws of the United States and the State of New York.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§1331, 1338 and 1367. Plaintiff's claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. §1051, et seq., and under the statutory and common law of the State of New York.

3. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is properly found in this district pursuant to 28 U.S.C. § 1391, in that (a) Defendant does and/or transacts business, including the activities complained of herein, or

may otherwise be found, in this judicial district, and (b) a substantial part of the events and omissions giving rise to Plaintiff's claims occurred and/or caused harm to Plaintiff in this judicial district.

## THE PARTIES

5. Plaintiff is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business at 195 Broadway, New York, New York 10007.

6. Upon information and belief, Defendant is a limited liability corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 18 Simmons Lane, Greenwich, Connecticut 06830.

## THE "SUPERS" SERVICE MARK

7. Plaintiff is a leading provider of integrated information and technology applications to the financial services industry.

8. One of Plaintiff's premiere services is the "AutEx" financial information system. AutEx is a financial software, hardware and networking system that provides pre-trade and order execution services for institutional equities traders.

9. The AutEx system was developed by Plaintiff over 35 years ago and has become the global industry standard for exchanging information among institutional trading partners. Over 800 of the world's leading brokers and institutions rely on the AutEx system to identify market liquidity and potential trading partners.

10. Through its AutEx system, Plaintiff provides, among other things, a high-speed online real-time messaging service through which brokerage houses can alert institutional investors of their desire to trade blocks of securities, by posting messages expressing their

interest in buying or selling a given security. These messages are known in the industry as "Indications of Interest," or "IOI's".

11. One special feature of the AutEx system is the availability of more detailed IOI messages, which feature certain additional information about the proposed securities trade. For many years, Plaintiff has used the "SUPERS" service mark to identify Plaintiff as the source of Plaintiff's detailed IOI messages. Currently, Plaintiff is the exclusive licensed user of the SUPERS service mark.

12. The SUPERS service mark is inherently distinctive and immediately identifies Plaintiff as the source of its detailed IOI messages. In addition, the SUPERS service mark has achieved favorable consumer and trade acceptance. As a result of such consumer and trade acceptance, the SUPERS service mark has acquired distinctiveness and has developed a strong association with Plaintiff as the provider of such detailed IOI messages.

13. The SUPERS service mark has been used exclusively by Plaintiff for approximately 35 years, and is widely recognized throughout the United States and the world as a service mark associated with Plaintiff.

14. As a result of Plaintiff's extensive and continuous use, the SUPERS service mark has developed into a valuable asset.

**DEFENDANTS' INFRINGING ACTIVITIES**

15. Upon information and belief, Defendant is engaged in the business of providing online messaging services for use in the equities trading industry, in direct competition with Plaintiff.

16. Upon information and belief, Defendant is advertising, promoting and offering for sale its messaging services, which includes IOI and detailed IOI messaging capabilities (the "Indii Service").

17. According to Defendant's website (http://www.indii.com), the Indii Service was developed over the last three years, and has been operational for the last fifteen months.

18. On its website, Defendant advertises that it provides messaging services to potential buyers of securities as follows:

> "Benefits for Buyside
>
> Ability to sort/file IOI's, Supers and Trade Advertisements
> Buyside IOI's and Supers sent to multiple sellside firms."

A copy of Defendant's website page is attached as Exhibit A.

19. Upon information and belief, the Indii Service is offered for sale or sold within the same segments of the marketplace and in the same channels of trade and distribution as Plaintiff's AutEx service utilizing the SUPERS service mark.

20. The aforementioned acts of Defendant, and in particular its unauthorized use of the SUPERS service mark, are likely to cause confusion, and mistakenly and deceptively foster the impression among consumers that (a) the Indii Service originates with Plaintiff, (b) there is some affiliation, connection or association of the Defendant with Plaintiff, and/or (c) said services are being offered to consumers with the sponsorship and/or approval of Plaintiff. The aforementioned acts of Defendant are also likely to dilute the distinctive quality of the SUPERS service mark.

## DEFENDANTS' INFRINGEMENT IS WILLFUL

21. In or about November 2003, upon discovery of Defendant's wrongful use of the SUPERS service mark, Plaintiff sent a letter to Defendant demanding that it cease and desist all use of the SUPERS service mark on its website.

- 4 -

22. Plaintiff received no response to its November 2003 cease and desist letter and, upon information and belief, Defendant continued to make unauthorized use of the SUPERS service mark on its website.

23. In or about May 2004, Plaintiff, through its attorneys, sent another cease and desist letter demanding that Defendant cease all further use of the SUPERS service mark.

24. Plaintiff received no response to its second cease and desist letter. However, in or about June 2004, Defendant removed references to the SUPERS service mark from its website. A copy of the relevant pages of Defendant's website, printed in or about June 2004, is attached as Exhibit B.

25. In or about November 2004, it came to Plaintiff's attention once again that Defendant has resumed its unauthorized use of the SUPERS service mark on its website. A copy of the relevant pages of Defendant's website is attached is Exhibit C.

26. As a result of the foregoing, upon information and belief, Defendant's conduct as alleged herein was willful, in that it has used and is using the SUPERS service mark, knowing or willfully ignoring the fact that Plaintiff has established prior rights with respect to such service mark.

## COUNT I
### (Trademark Infringement (15 U.S.C. § 1125(a)))

27. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 26 above as if fully set forth herein.

28. Defendant's use of the SUPERS service mark in connection with its Indii Service constitutes willful infringement of the SUPERS service mark in violation of 15 U.S.C. § 1125(a), in that such use is likely to cause confusion, deception and mistake among the consuming public and the trade as to the source or origin of Defendant's Indii Service.

4982429.2
08595-2138

29. Defendant's conduct has caused and will continue to cause Plaintiff irreparable injury, and Plaintiff has no adequate remedy at law.

## COUNT II
### (False Designation of Origin (15 U.S.C. § 1125 (a))

30. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 29 hereof as if fully set forth herein.

31. By reason of the foregoing, Defendant's unlawful conduct constitutes the willful use in interstate commerce of false designations of origin or false or misleading descriptions or representations of fact which are likely to cause confusion, mistake or deception, in that it falsely designates Defendant's services as originating from, being sponsored by, and/or being affiliated with Plaintiff, all in violation of 15 U.S.C. § 1125(a).

32. Such conduct on the part of the Defendant has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

## COUNT III
### (Common Law Trademark Infringement)

33. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 32 above as if fully set forth herein.

34. Defendant's use of the SUPERS service mark constitutes infringement of such service mark in violation of the common law, in that such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source of Defendant's services.

35. Defendant's conduct has caused and will continue to cause irreparable injury to Plaintiff, and Plaintiff has no adequate remedy at law.

## COUNT IV
### (Common Law Unfair Competition)

36. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 35 above as if fully set forth herein.

37. By reason of Defendant's foregoing actions, Defendant has engaged, and is continuing to engage, in acts of unfair competition in violation of the common law.

38. Defendant's conduct has caused and will continue to cause Plaintiff irreparable injury, and Plaintiff has no adequate remedy at law.

## COUNT V
### (N.Y. General Business Law § 360-1)

39. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 38 above as if fully set forth herein.

40. Defendant's activities have caused and will continue to cause a likelihood of injury to Plaintiff's public image and reputation for the provision of information and technology applications and services, and to dilute the distinctive quality of Plaintiff's SUPERS service mark, and all rights held thereunder, in violation of the General Business Law of the State of New York.

41. By reason of the foregoing, Defendant has violated and is continuing to violate § 360-1 of the New York General Business Law.

42. Defendant's conduct has caused and will continue to cause Plaintiff irreparable injury, and Plaintiff has no adequate remedy at law.

## COUNT VI
### (N Y. General Business Law § 349)

43. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 above as if fully set forth herein.

4982429.2
08595-2138

44. Defendant's conduct constitutes deceptive acts and practices in the conduct of its business, in violation of the General Business Law of the State of New York § 349.

45. Defendant's conduct has caused and will continue to cause Plaintiff irreparable injury, for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment:

1. Permanently enjoining and restraining Defendant, its officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them from:

    (a) imitating, copying, importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting, or making any unauthorized use of the SUPERS service mark;

    (b) importing, exporting, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, copy or colorable imitation of the SUPERS service mark;

    (c) using any simulation, reproduction, copy or colorable imitation of the SUPERS service mark, in connection with the promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product, in such manner as to relate or connect, or tend to relate or connect, such product in any way with Plaintiff, or to any goods sold, sponsored, approved by, or connected with Plaintiff;

    (d) using any simulation, reproduction, copy, or colorable imitation of the SUPERS service mark, in connection with the promotion, advertisement, display, sale, offering for sale, production, import, export, circulation or distribution of any product, which serves to

4982429.2
08595-2138

dilute, or tends to dilute the SUPERS service mark the reputation or the distinctive quality of such trademark;

    (e)    engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of any of Plaintiff's trademarks or of Plaintiff's rights in, or its right to use or exploit, such trademarks or constituting any dilution of the SUPERS service mark and the reputation and the good will associated with such mark;

    (f)    engaging in any other activity, including the effectuation of assignments or transfers of Defendant's interests in simulations, reproductions, copies or colorable imitations of the SUPERS service mark, including the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsections 1(a) through 1(e) hereof.

    2.    Directing that Defendant recalls all infringing products, advertisements, and promotional and other materials shipped to any customer(s), domestic or foreign, and thereafter deliver for destruction all infringing products, labels, prints, signs, packages, dies, wrappers, designs, artwork, receptacles and advertisements in its possession, custody or control.

    3.    Directing that Defendant file with the Court and serve upon Plaintiff, within thirty (30) days after service of the judgment upon Defendant, a written report under oath setting forth in detail the manner in which Defendant has complied with the foregoing requirements.

    4.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product offered for sale, sold or otherwise circulated or promoted by Defendant is authorized by Plaintiff or is related to or associated in any way with Plaintiff's products or services.

5. Awarding Plaintiff all damages sustained by Plaintiff as the result of Defendant's wrongful acts in an amount to be determined at trial but not less than $75,000.

6. Requiring Defendant to account and pay over to Plaintiff all profits realized by (a) Defendant's infringement of the SUPERS service mark; (b) Defendant's false designations of origin or representations that it is in some way affiliated with Plaintiff; and (3) Defendant's unfair competition against Plaintiff, and that these illicit profits be trebled and that prejudgment interest and attorney's fees be awarded, pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117), since they were generated willfully by Defendant.

7. Awarding Plaintiff its costs and reasonable attorneys' and investigatory fees, together with pre-judgment interest.

8. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 21, 2004

                Respectfully Submitted,

                TORYS LLP

BY:   s/_____
      Louis S. Ederer (LE-7475)
      Karin L. Bonner (KB-5999)
      237 Park Avenue
      New York, New York  10017
      Telephone: 212.880.6000

      Attorneys for Plaintiff
      Thomson Financial Inc.

4982429.2
08595-2138

**EXHIBIT A**



**EXHIBIT B**



# Indii.COMmunications



## Benefits for Buyside

- Two click threaded instant messages (chat) keyed to content an The Buyside can click on an indication and be immediately conn salesperson at that firm.

- Messaging delivered via the Internet at reduced cost.

- Trade volume shown with indications and updated in real-time.

- Ability to sort/filter IOIs and Trade Advertisements.

- True picture of who's out and thirty day history - Expired or canc indications are expunged in real-time.

- Sector lists.

- Ten Preset lists.

- Buyside IOIs sent to multiple sellside firms.

[Home] [Sellside Area] [Tech Area] [Buyside Area] [About Us] [Indii Solution] [Contact Us] [Indii Demo] [Laur

Buyside Area



**EXHIBIT C**



# Indii.COMmunications



## Benefits for Buyside

- Two click threaded instant messages (chat) keyed to content and covera  
  The Buyside can click on an indication and be immediately connected to  
  salesperson at that firm.

- Messaging delivered via the Internet at reduced cost.

- Trade volume shown with indications and updated in real-time.

- Ability to sort/filter IOIs, Supers and Trade Advertisements.

- True picture of who's out and thirty day history - Expired or cancelled  
  indications are expunged in real-time.

- Sector lists.

- Ten Preset lists.

- Buyside IOIs and Supers sent to multiple sellside firms.

[Home] [Sellside Area] [Tech Area] [Buyside Area] [About Us] [Indii Solution] [Contact Us] [Indii Demo] [Launch Indii]

